# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSEPH BOND & TONIA JEWELL-VINES, on behalf of themselves and others similarly situated, | |
| Plaintiff, | Case No. 1:23-cv-04385<br>The Honorable Charles P. Kocoras |
| v. | |
| ALLSTATE INSURANCE COMPANY, | **JURY DEMAND** |
| Defendant. | |

## SECOND AMENDED CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiffs Joseph Bond ("Bond") & Tonia Jewell-Vines ("Jewell-Vines") ("Plaintiffs") bring this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 after receiving unsolicited telemarketing calls promoting the sale of Defendant Allstate Insurance Company's ("Allstate's") insurance products.

2. Because telemarketing campaigns generally place calls to hundreds, thousands, or even millions of potential customers *en masse*, Plaintiffs bring this action against Allstate on behalf of a proposed class of persons who received similar unsolicited telemarketing calls promoting the sale of Allstate insurance products.

3. A class action is the best means of obtaining redress for the Allstate's wide scale illegal telemarketing and is consistent both with the private rights of action afforded by the TCPA, and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

4. Bond is a natural person who resided in Georgia at all relevant times.

5. Jewell-Vines is a natural person who resided in Maryland at all relevant times.

6. Allstate is an Illinois corporation with its principal place of business in this District at all relevant times.

## Jurisdiction & Venue

7. The Court has federal question subject matter jurisdiction over the claims. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Allstate resides in this district

## Factual Allegations Concerning Allstate

9. Allstate engages in widespread unsolicited telemarketing to promote the sale of its insurance products.

10. Allstate engages insurance agents across the country to conduct that telemarketing on its behalf and authorizes those insurance agents to place telemarketing calls on Allstate's behalf and subject to Allstate's control, including prerecorded telemarketing calls and calls to numbers registered on the National Do-Not-Call list

11. Allstate is extensively involved in the operations of its insurance agents.

12. Allstate requires its insurance agents to follow detailed standards.

13. Allstate sets the standards its insurance agents must follow.

14. Allstate has the ability, at any time without prior notice to its insurance agents, to change the standards its insurance agents must follow.

15. From time to time, Allstate changes the standards its insurance agents must follow.

16. Allstate has the right to monitor its insurance agents' compliance with Allstate's standards and terminate the agency relationship for noncompliance.

17. Allstate sets new customer growth targets for its insurance agents.

18. Allstate monitored and periodically assessed its insurance agents' performance.

19. Allstate authorized its insurance agents to hire certain telemarketing vendors that Allstate expressly approved ("Allstate Approved Vendors") to act as sub-agents and place the telemarketing calls on Allstate's behalf and subject to Allstate's control, including prerecorded telemarketing calls and calls to numbers registered on the National Do-Not-Call list

20. Prior to granting approval, Allstate investigated the telemarketing practices of the Allstate Approved Vendors and approved of those practices.

21. At all relevant times, Allstate was aware that the Allstate Approved Vendors placed prerecorded telemarketing calls promoting Allstate's insurance products and Allstate approved that conduct.

22. At all relevant times, Allstate was aware that the Allstate Approved Vendors placed telemarketing calls to numbers registered on the National Do-Not-Call List and Allstate approved that conduct.

23. At all relevant times, Allstate was aware that the Allstate Approved Vendors placed telemarketing calls to persons who had not provided Allstate with express written consent to receive such calls and Allstate approved that conduct.

24. It was common for Allstate to discuss the Allstate Approved Vendors with its insurance agents during meetings with its insurance agents.

25. Allstate set up meetings between its insurance agents and the Allstate Approved Vendors for the vendors to pitch their services. Allstate invited its insurance agents to attend those meetings, and Allstate participated in those meetings.

26. Allstate's insurance agents maintained interim control over the telemarketing conduct of the Allstate Approved Vendors for calls promoting Allstate's insurance products.

27. The insurance agents specified to the Allstate Approved Vendors the geographic parameters for the leads they could telemarket to, the specific type(s) of Allstate insurance to promote, the number of leads to generate, and the times in which to call.

28. The Allstate insurance agents instructed the vendors whether to provide the lead's contact information to the agency for a callback, or transfer the calls "live" to the agency and to what specific telephone number(s).

29. The Allstate insurance agents had the right to terminate their relationships with the Allstate Approved Vendors.

30. The Allstate insurance agents had the ability to make interim changes to the call specifications.

31. The Allstate insurance agents changed various call specifications from time to time.

32. The Allstate insurance agents sold Allstate insurance policies to leads generated by the illegal telemarketing calls placed by the Allstate Approved Vendors, thereby enlarging Allstate's customer base, and insurance premiums were collected for those insurance policies.

33. When an Allstate insurance agent sells an Allstate insurance policy as a result of illegal telemarketing calls and a premium is collected on that policy, Allstate receives a portion of the premium and the Allstate insurance agent receives a portion of the premium

34. Allstate knowingly accepted the benefits of the illegal telemarketing calls, both in the form of advertising benefits that Allstate obtained during the calls themselves and in collection of premium payments resulting from any sales made from those calls

35. This is not the first lawsuit against Allstate alleging TCPA violations that arise from calls placed by an Allstate Approved Vendor. Indeed, Allstate previously settled a class action in this District concerning calls placed by one such vendor. See 19-cv-06662 (Gebka v. Allstate Insurance Company)

36. Accordingly, Allstate has been on notice since at least 2019 that the Allstate Approved Vendors are violating the TCPA on Allstate's behalf, yet Allstate has allowed the violations to continue.

**Factual Allegations Concerning Bond**

37. On June 15, 2023, an Allstate approved vendor placed an unsolicited and prerecorded telemarketing call to Bond's telephone number (252-509-XXXX).

38. This call used a prerecorded, robotic sounding voice to promote the sale of Allstate's automobile insurance.

39. After the call, an Allstate representative with an Allstate.com email address emailed Bond to follow up on the call with a written proposal for the sale of Allstate's automobile insurance.

40. Bond's telephone number (252-509-XXX) was at all relevant times a residential number assigned to cellular telephone service.

41. Bond added the number to the National Do Not Call Registry on April 3, 2020.

42. Bond had not consented to receive the call or otherwise invited the call.

**Factual Allegations Concerning Jewell-Vines**

5

43. In February 2023, an Allstate approved vendor placed numerous unsolicited telemarketing calls to Jewell-Vines's telephone number (301-609-XXXX)

44. When Jewell-Vines answered these calls, a live representative promoted the sale of Allstate's automobile insurance

45. After one of these calls on February 17, 2023, an Allstate representative with an Allstate.com email address emailed Jewell-Vines to follow up on the call with a written proposal for the sale of Allstate's automobile insurance.

46. Jewell-Vines's telephone number was at all relevant times a residential number assigned to cellular telephone service.

47. Jewell-Vines added the number to the National Do Not Call Registry on May 24, 2008.

48. Jewell-Vines had not consented to receive the calls or otherwise invited the calls.

49. At all relevant times, Allstate failed to maintain adequate policies, procedures, and training to ensure that it did not place an unlawful number of calls to numbers registered on the national do-not-call registry.

50. Allstate harmed Plaintiffs and all members of the classes defined below because the calls invaded their privacy, occupied their telephone lines, and wasted their time.

**Class Action Allegations**

51. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Bond brings this action on behalf of the following class:

> Prerecorded Call Class
> All persons within the United States subscribing to (a) a cellular telephone number to which (b) an Allstate Approved Vendor placed a phone call (c) using a prerecorded voice and (d) promoting the sale of Allstate's insurance products (e) who had not signed a written agreement authorizing the calls by or on behalf of Allstate (f) on a date no earlier than the date that is four years

6

prior to the filing of this action.

52. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Jewell-Vines bring this action on behalf of the following class:

> Do-Not-Call Class
> All persons within the United States subscribing to (a) a residential or cellular telephone number to which (b) an Allstate Approved Vendor placed at least two telephone solicitation calls during a 12-month period; (c) promoting Defendant's products or services (c) when the number had been registered on the do-not-call list for at least 30 days prior to the first call (d) without a written agreement between Allstate and the called party authorizing the calls and (e) where the last call was made no earlier than the date that is four years prior to the filing of this action

53. Excluded from the classes are the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

54. The classes as defined above are identifiable through phone records and phone number databases.

55. The potential class members number at least in the hundreds. Individual joinder of these persons is impracticable.

56. Plaintiff Bond is a member of the Prerecorded Call Class.

57. Plaintiff Jewell-Vines is a member of the Do-Not-Call Class

58. There are questions of law and fact common to Plaintiffs and to the proposed classes, including but not limited to the following:

    a. Whether Allstate is vicariously liable for the calls placed by the Allstate Approved Vendors;

    b. Whether the calls at issue used a prerecorded voice;

      c.      Whether the calls at issue qualify as telemarketing or telephone solicitations;

      d.      Whether Allstate and the Allstate Approved Vendors maintained adequate policies, procedures, and training to ensure they did not place an unlawful number of calls to numbers on the National Do Not Call Registry;

      e.      Whether Defendant's calls were solicitations;

59.    Plaintiffs' claims are typical of the claims of class members.

60.    Plaintiff are adequate representatives of the classes because their interests do not conflict with the interests of the classes, they will fairly and adequately protect the interests of the classes, and they are represented by counsel skilled and experienced in class actions, including TCPA class actions.

61.    The actions of the Defendant are generally applicable to the classes as a whole and to Plaintiffs.

62.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

63.    The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## Legal Claims

**Count One (Plaintiff Bond on Behalf of the Prerecorded Call Class)**
**Violations of the TCPA's Prerecorded Call Provisions**

64. Plaintiff Bond incorporates the allegations from all previous paragraphs as if fully set forth herein.

65. Allstate violated 47 U.S.C. § 227(b)(1)(A) and 47 C.F.R. § 64.1200(a)(2) by causing prerecorded calls promoting Allstate's insurance products to be placed to Plaintiff and the members of the Prerecorded Call Class, without prior express written and signed consent to received calls by or on behalf of Allstate.

66. Allstate's violations were knowing and/or willful.

67. The TCPA provides a private right of action for these claims pursuant to 47 U.S.C. § 227(b)(3).

### Count Two (Plaintiff Jewell-Vines on Behalf of the Do-Not-Call Class)
### National Do-Not-Call Registry Provisions

68. Plaintiff Jewell-Vines incorporates the allegations from all previous paragraphs as if fully set forth herein.

69. Allstate violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) by causing the initiation of multiple solicitation calls within a 12-month period to residential telephone numbers despite their registration on the National Do Not Call Registry and without signed, written prior express invitation or permission with Allstate.

70. Allstate's violations were knowing and/or willful.

71. The TCPA provides a private right of action for these claims pursuant to 47 U.S.C. § 227(c)(5).

### Relief Sought

For themselves and all Classes members, Plaintiffs request the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiffs as representative of the Classes;

C.	Appointment of the undersigned counsel as counsel for the Classes;

D.	A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E.	An order enjoining Defendant and/or its affiliates, agents, and/or other related entities, as provided by law, from using pre-recorded messages and calling persons on the National Do-Not Call Registry;

F.	An award to Plaintiffs and the Classes of statutory damages, as allowed by law;

G.	Leave to amend this Complaint to conform to the evidence presented at trial; and

H.	Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiffs request a jury trial as to all claims of the complaint so triable.**

>	PLAINTIFFS,
>	By their attorneys
>
>	*/s/ Timothy J. Sostrin*
>	Timothy J. Sostrin
>	Keith J. Keogh
>	KEOGH LAW, LTD.
>	55 W. Monroe St. Suite 3390
>	Chicago, IL 60603
>	tsostrin@KeoghLaw.com